UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WISCONSIN

Memorial Hospital, Inc.,

       Plaintiff,

       v.

NextGen Healthcare Information Systems, Inc., and
NextGen Healthcare Information Systems, LLC,

       Defendants.

Case No. 12-CV-649

# COMPLAINT

The plaintiff, Memorial Hospital, Inc., alleges the following for its complaint against defendants, NextGen Healthcare Information Systems, Inc. and NextGen Healthcare Information Systems, LLC:

## THE PARTIES

1.    Plaintiff, Memorial Hospital, Inc., which does business as Memorial Medical Center ("MMC"), is a Wisconsin non-stock corporation that operates a critical access hospital located at 216 Sunset Place, Neillsville, Wisconsin 54456, and has clinics in Neillsville, Greenwood, and Loyal, Wisconsin.

2.    Defendant, NextGen Healthcare Information Systems, Inc., is a California corporation having its principal place of business at 795 Horsham Road, Horsham, Pennsylvania 19044.

3.    Defendant, NextGen Healthcare Information Systems, LLC, is a California limited liability company having its principal place of business at 795 Horsham Road, Horsham,

1

Pennsylvania 19044. Upon information and belief, no member of NextGen Healthcare Information Systems, LLC, is a Wisconsin citizen.

4. NextGen Healthcare Information Systems, Inc. was the party that MMC had originally contracted with, but, on information and belief, in March 2012, NextGen Healthcare Information Systems, Inc. became NextGen Healthcare Information Systems, LLC. In this Complaint, the defendants are collectively referred to as ("NextGen").

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332. MMC is a citizen of Wisconsin. Upon information and belief, NextGen is a citizen of Pennsylvania, and none of its members are citizens of Wisconsin. Thus, the parties are diverse and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims in this action occurred in this judicial district.

7. The defendants are subject to personal jurisdiction in this district pursuant to Wis. Stat. § 801.05(1)(d) because they are engaged in substantial and not isolated activities within this state.

8. The defendants are also subject to personal jurisdiction in this district pursuant to at least Wis. Stat § 801.05(3) because this is an action claiming injury to MMC within Wisconsin arising out of the defendants' acts in Wisconsin.

9. The exercise of personal jurisdiction over the defendants is consistent with the Due Process Clause of the U.S. Constitution.

**FACTUAL BACKGROUND**

10. Beginning in early 2010, MMC began to research and interview providers of electronic health records (EHR) software to prepare for an EHR implementation project in its hospital in Neillsville, Wisconsin, and in its clinics in Neillsville, Loyal, and Greenwood, Wisconsin.

11. MMC engaged in a series of discussions, correspondence, and meetings with NextGen representatives regarding implementation of NextGen EHR software, which culminated in the parties entering into a software license and implementation agreement in December 2010 for the installation and use of NextGen EHR software at MMC's facilities.

12. Throughout the parties' communications, MMC repeatedly made clear that it was seeking EHR software that could be readily used in both ambulatory (clinic) and inpatient (hospital) settings, in an integrated manner, such that one software system would be used in both the clinics and in the hospital.

13. MMC also made clear that it was seeking EHR software that could be used to achieve "Meaningful Use" within the meaning of the American Recovery and Reinvestment Act of 2009. Achieving Meaningful Use in connection with its EHR implementation project would entitle MMC to receive significant incentive funds from the government to help pay for MMC's implementation and use of EHR technology.

14. MMC also made clear to NextGen that it was seeking a single integrated system that would allow the hospital, the clinics, and each of the administrative functions in the MMC health care system to use data from one central database.

3

**NextGen's representations to MMC prior to entering into the Implementation Agreement.**

15. During the process of interviewing and selecting NextGen as MMC's EHR software vendor, NextGen made representations to MMC regarding its software capabilities and implementation process.

16. On July 27 and 28, 2010, NextGen representatives, including Jim Waldron and Kalli Martin, presented a software demonstration to MMC health care providers and business personnel on-site at MMC in Neillsville, Wisconsin.

17. During the July 2010 meetings, and in particular, during the wrap-up session on July 28, 2010, NextGen representatives used a diagram drawn on a white-board in the meeting room to explain and represent to MMC that NextGen's software system was a fully-integrated system, meaning that the hospital, the clinics, and each of the administrative functions in the MMC health care system would all use data from one central database.

18. During the July 2010 meetings, NextGen also represented that its software would provide a "single point of access," meaning, a single log-in and password, for MMC healthcare providers to review the entire real-time medical history of a patient.

19. During the July 2010 meetings, NextGen also stated that it would guarantee that MMC would be able to achieve Meaningful Use using NextGen software.

20. Shortly after the on-site demonstration at MMC's facilities, each of these representations was confirmed in a July 31, 2010 email from Jim Waldron, NextGen's Midwest Regional Director, stating that:

- NextGen's software system provides "one relational data base [sic] for ease of access by your care givers and others to important patient diagnostic, historical, and demographic information"

- NextGen's software "can be the single point of access to review the entire medical history of the patient across your continuum of care" and that "[a]

4

>   physician can open a session in their home, office, another hospital, while traveling and type in their security sign-on to access patient information real-time as if they were at MMC."

- "The NextGen EMR and 'Meaningful Use' functionality are CCHIT-11 certified and warranted in writing with a money back guarantee."

21.     After the July 2010 demonstration, MMC and NextGen made arrangements for MMC representatives to visit healthcare facilities using NextGen's software. In particular, NextGen suggested a site-visit at the St. Croix Regional Medical Center in St. Croix Falls, Wisconsin. NextGen told MMC that the St. Croix facility was in the process of implementing NextGen's EHR software as a fully integrated system for both ambulatory and inpatient applications.

22.     On September 17, 2010, certain representatives from MMC met with NextGen representatives at the St. Croix Regional Medical Center in St. Croix Falls, Wisconsin for an on-site product demonstration. Although NextGen's ambulatory EHR software was being used at St. Croix, the NextGen's inpatient software installation was not yet complete. Thus, to view the inpatient software in a hospital setting, MMC representatives met with NextGen representatives at St. Mary's Regional Medical Center in Enid, Oklahoma, on September 9, 2010, for an on-site demonstration of certain aspects of NextGen's software, such as nursing, pharmacy, and radiology, that were not yet available for demonstration in St. Croix Falls.

23.     During these site visits, NextGen reiterated to MMC that each of its software systems, including all ambulatory, inpatient, financial, and pharmacy systems, and all supporting applications, such as nursing and radiology, would be fully integrated and accessible by individual healthcare providers with a single log-in and password when implemented at MMC.

24.     Before, during, and after these site visits, NextGen also continued to represent that NextGen's software was capable of achieving Meaningful Use. For example, in an October

5

26, 2010 letter from NextGen to MMC, NextGen acknowledged the importance of achieving Meaningful Use, and restated NextGen's "money back warranty focused on the timely delivery of software which will continue to address the changing 'Meaningful Use' requirements."

25. In the October 26 letter, NextGen also made the following representations to MMC:

- NextGen "is ready to start your installation within 30 days of contract signing, using a well laid out install plan we share in part during our presentations, and spanning approximately 7 months."

- NextGen uses "seasoned installation personnel who are completely familiar with our systems, no outside contractors are used. MMC's installation team will be made up of experienced nursing personnel, ancillary departmental team members, interface technicians, NextGen system programmers, and YOUR project manager."

- "NextGen offers a complete solution which can include Financials, physicians practice, ambulatory settings, and of course our HIS solutions across your continuum of care. We have a total solution many vendors can't offer MMC, which is based on current platforms and technology."

26. Based upon NextGen's representations in its correspondence and communications with MMC, including during its demonstrations and site-visit meetings, MMC selected NextGen for its EHR software provider and to implement additional software systems to function as a fully integrated software system for use at MMC's hospital and clinics.

27. At the end of December 2010, the parties entered into a written agreement entitled the "Technology License & Integration, Support & Maintenance Services Agreement," (the "Implementation Agreement"), which was signed by MMC on December 28, 2010 and by NextGen on December 30, 2010.

6

**NextGen's failure to perform according to the Implementation Agreement.**

28. After the parties executed the Implementation Agreement, NextGen failed to perform according to the agreement in several ways.

29. NextGen failed to implement its software on the schedule described in the Implementation Agreement or on revised schedules as subsequently agreed by the parties.

30. The Implementation Agreement includes a "Project Scope of Work" that provides for a 26-week implementation schedule for completion of the software installation project, which was to begin with a "Kick-Off/Discovery meeting at the facility."

31. Although the Implementation Agreement was executed at the end of December 2010, and despite NextGen's representation that it would start the installation 30 days after contract signing, NextGen did not have a Kick-Off/Discovery meeting at MMC until April 28 and 29, 2011, almost four months after the contract was signed.

32. According to the Project Scope of Work, NextGen's project manager was to develop a specific project plan for the implementation of the selected NextGen software at MMC.

33. A critical deadline in the project plan was the "go-live date," which was the date on which the software would be fully implemented and ready for use by MMC, including use that would constitute Meaningful Use.

34. However, NextGen consistently failed to keep up with any project plan, and failed to implement the software on a 26 week schedule, or any other schedule that it submitted to MMC. Due to NextGen's failure to follow a project plan, the intended "go-live" dates were pushed back six times. The go-live date in NextGen's initial project plan was August 21, 2011,

7

but was moved to September 11, 2011, November 2011, January 8, 2012, March 20, 2012, April 17, 2012, and then to June 11, 2012.

35. Another of NextGen's failures was that it did not provide adequate resources and expertise to successfully accomplish the implementation.

36. In the Project Scope of Work, NextGen promised that it "will provide resources, application expertise and project management skills for the products" outlined in the Implementation Agreement. NextGen failed to do this.

37. NextGen had significant turn-over among its employees that were assigned to the project at MMC. At least 3 different NextGen project managers either left the company or the MMC implementation project during the 16 months that the parties worked together.

38. NextGen's project managers were not familiar with both NextGen's impatient software and its ambulatory software, and as a result, they could not effectively support an implementation of an integrated system.

39. NextGen employees assigned to the project were often unresponsive to MMC, unavailable for meetings, and were repeatedly cancelling meetings and training sessions on short notice.

40. As an example of NextGen's failure to provide adequate resources and expertise for the project, the data conversion required for the implementation of the NextGen's software was never accomplished. The NextGen personnel assigned to this aspect of the project never completed it, regularly missed scheduled phone calls and meetings, or cancelled them at the last minute.

41. Another example is that NextGen's pharmacy implementation specialist lacked knowledge and experience with the NextGen system and MMC's requirements for pharmacy

billing.  Her incorrect assumptions and instructions caused MMC staff to have to rebuild the pharmacy system twice, causing weeks of delay.

42. On several occasions, NextGen admitted that it was not providing sufficient resources to the implementation project at MMC.  For example, when the initial go-live date was moved from August 21, 2011 to September 11, 2011, NextGen admitted that it needed to double-check the date because it had staff "double booked" NextGen personnel.  Later, in October 2011, when confronted by MMC regarding the insufficiency of NextGen resources, NextGen wrote to MMC that "additional resources" have been assigned to get engaged so "we can get this back on track."  After additional problems along these lines occurred again November 2011, a NextGen project manager wrote: "I've been working with our internal team to improve on participation/attendance on our weekly status calls."

**NextGen's software did not function as promised.**

43. NextGen software did not function as NextGen promised it would.  As a result of problems with NextGen software, NextGen failed to complete or install a functional EHR software system at MMC.  NextGen was never able to use the software at MMC to train MMC staff or to demonstrate the software on a hypothetical patient.

44. For example, by the fall of 2011, it became apparent that NextGen's software that was being installed at MMC, specifically version 2.4 of the software, could not integrate medication allergy information for patients between the ambulatory and the inpatient components the software.  In other words, information regarding a patient's medication allergies that had been entered through the clinic component of the software could not be accessed through the hospital component of the software, presenting obvious patient safety concerns.

45. In response to this problem, NextGen represented to MMC that the new version of its software, namely version 2.4.4, would be able to integrate medication allergy information between ambulatory and inpatient settings. In January 2012, after significant delays caused by this defect in NextGen's version 2.4 software, in an effort to remedy the problem, the parties decided to use NextGen's version 2.4.4 software.

46. Although NextGen represented that its software is a complete EHR system, neither version 2.4 nor 2.4.4 of the NextGen software was capable of supporting titrated medications, which are medications delivered intravenously at dosages adjusted for physiological conditions experienced by the patient (e.g., the delivery of Pitocin during labor and delivery).

47. Another example of NextGen's software not functioning as promised was that the NextGen software was not capable of being used by health care providers with a "single point of access," meaning, a single log-in and password, to review the entire real-time medical history of a patient.

48. Due to all of the problems described above, it became impossible for NextGen's software to be implemented on a schedule that would allow MMC to demonstrate Meaningful Use of EHR software in time to be eligible for 2012 incentive funds.

**NextGen's Failure to Perform Forces MMC to Cancel the Implementation**

49. During the lengthy installation project, MMC regularly notified NextGen in writing regarding the shortcomings of the NextGen EHR software and NextGen's implementation of its software at MMC.

50. By April 2012, the go-live date for the NextGen software implementation had been pushed back five times, and MMC was concerned that it would not be able to demonstrate

10

Meaningful Use in time to be eligible for 2012 incentive funds.  MMC was doubtful that NextGen could ever implement a functional NextGen EHR system at its hospital.

51. On April 3, 2012, MMC sent a document entitled "Position Statement" to NextGen articulating a detailed list of concerns and requesting a meeting to discuss these concerns.

52. Throughout the rest of April 2012, NextGen and MMC exchanged communications regarding this Position Statement and regarding whether NextGen could successfully implement an EHR system at MMC's hospital.

53. Despite multiple communications between the parties in April and early May 2012, NextGen never committed to a realistic go-live date or to providing satisfactory corrections to the deficiencies in the NextGen software and implementation problems.  By May 2012, it was apparent that achieving Meaningful Use in 2012 was impossible.

54. On May 3 and 4, 2012, MMC and NextGen had an in-person meeting at MMC's facilities.  MMC requested this meeting in an effort to save the project and to evaluate whether NextGen could deliver a functional software system in time for MMC to achieve Meaningful Use.  One of the purposes of this meeting was for NextGen to demonstrate to MMC that it could use the NextGen software system at MMC, by walking a hypothetical patient through the system, but this demonstration failed.  Another purpose of this meeting was for NextGen to remedy a list of twenty-one high priority problems with the implementation project, but NextGen was only able to remedy five of these problems.

55. On May 9, 2012, MMC wrote to NextGen that it should suspend all meetings while it evaluated NextGen's most recent response regarding the Position Statement.

56. On May 23, 2012, MMC, through counsel, sent NextGen a letter terminating the implementation project and the parties' agreement.

57. As a result of NextGen's failure to provide and implement its EHR software as promised, MMC suffered significant monetary losses totaling at least $489,887.75, as well as significant losses of time, and productivity.

58. Specifically, MMC paid to NextGen $289.887.75, for which it received no benefit whatsoever. In addition, due to NextGen's failure to provide and implement its EHR software, MMC lost $50,000.00 of a USDA Community Facility grant that it had been awarded, and an estimated $150,000.00 in Meaningful Use Incentive Funds.

### FIRST CAUSE OF ACTION
### Breach of Contract

59. The allegations in paragraphs 1 through 58 are incorporated here by reference.

60. MMC and NextGen entered into a valid and binding agreement.

61. MMC performed its obligations under the parties' agreement.

62. NextGen has breached that agreement by: (a) failing to implement its EHR software at MMC according to the Implementation Agreement, or any project schedule subsequently agreed on by the parties; (b) failing to provide resources, application expertise, and project management skills as promised in the parties' Implementation Agreement; and (c) failing to provide EHR software having the features and functionality promised by NextGen.

63. MMC has been damaged by NextGen's breaches in an amount to be determined at trial, but in no case less than $489,887.75, plus interest.

64. Each of the defendants is jointly and severally liable for the damages suffered by MMC.

## SECOND CAUSE OF ACTION
### Breach of the Implied Covenant of Good Faith and Fair Dealing

65.    The allegations in paragraphs 1 through 64 are incorporated here by reference.

66.    In addition to its express terms, the parties' Implementation Agreement includes an implied covenant of good faith and fair dealing.

67.    The implied duty of good faith and fair dealing obligated NextGen to work on the EHR implementation project for MMC diligently, cooperatively, and without unreasonable delays.

68.    NextGen failed to act in good faith, as set forth in this Complaint, by: (a) failing to devote sufficient resources and expertise to the implementation project; (b) failing to communicate effectively regarding issues and deficiencies in the NextGen software; (c) frequently cancelling meetings and teleconferences on short notice; (d) causing unreasonable delays in the implementation project schedule and go-live dates; and (e) failing to cooperate with MMC to work in accordance with an implementation schedule that would have allowed MMC to achieve Meaningful Use in 2012.

69.    These actions constitute additional breaches of the parties' agreement.

70.    As a result of NextGen's breaches, MMC has been damaged in an amount to be determined at trial, but in no case less than $489,887.75, plus interest.

71.    Each of the defendants is jointly and severally liable for the damages suffered by MMC.

## THIRD CAUSE OF ACTION
### Unjust Enrichment

72.    The allegations in paragraphs 1 through 71 are incorporated here by reference.

73. In connection with the EHR software implementation project described in this Complaint, MMC paid NextGen $289,887.75.

74. MMC's payments to NextGen were a specific benefit conferred upon NextGen.

75. NextGen knowingly accepted the benefit conferred upon it by MMC.

76. The acceptance and retention by NextGen of the benefit conferred on it were under such circumstances that it would be inequitable for NextGen to retain the benefit.

77. Because NextGen was unjustly enriched by MMC's payments in connection with the EHR software implementation project, MMC is entitled to recover $289,887.75, plus interest, from NextGen.

### FOURTH CAUSE OF ACTION
### Fraud in the Inducement

78. The allegations in paragraphs 1 through 77 are incorporated here by reference.

79. NextGen made repeated factual representations to MMC that: (a) NextGen would implement its EHR software in time for MMC to demonstrate Meaningful Use in 2012; (b) NextGen EHR software would provide a single point of access, meaning a single log-in and password for health care providers to access patient medical records;  and (c) the NextGen EHR software systems would function as a fully integrated system.

80. NextGen made each of these representations knowing that they were untrue or recklessly, without caring whether they were true or false.

81. NextGen made these representations with the intent to induce MMC to enter into a relationship with NextGen, including the Implementation Agreement, which MMC subsequently did.

82. At the time the representations were made, MMC believed the representations to be true and reasonably and justifiably relied on each representation to its detriment.  These

representations were material to MMC's decision to enter into a relationship with NextGen, including the Implementation Agreement and, had MMC known that these representations were false or misleading, it would not have contracted with NextGen.

83. MMC was damaged by NextGen's conduct in an amount to be proven at trial, plus punitive damages.

## FIFTH CAUSE OF ACTION
### Negligent Misrepresentation

84. The allegations in paragraphs 1 through 83 are incorporated here by reference.

85. NextGen made repeated factual representations to MMC that: (a) NextGen would implement its EHR software in time for MMC to demonstrate Meaningful Use in 2012; (b) NextGen EHR software would provide a single point of access, meaning a single log-in and password for health care providers to access patient medical records; and (c) the NextGen EHR software systems would function as a fully integrated system.

86. NextGen had a duty of care, or voluntarily assumed a duty of care, to MMC. NextGen failed to exercise ordinary care in making these factual representations to MMC, or in ascertaining the truth of the facts asserted to MMC.

87. At the time the representations were made, MMC believed the representations to be true and reasonably and justifiably relied on each representation to its detriment.

88. MMC was damaged by NextGen's conduct in an amount to be proven at trial, plus punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, MMC respectfully requests that this Court grant judgment in its favor against NextGen, and award MMC:

A. Damages of no less than $489,887.75 plus interest, for which the defendants are jointly and severally liable;

B. Actual and punitive damages, including MMC's attorneys' fees, in an amount to be proven at trial for MMC's Fourth and Fifth Causes of Action;

C. All such other relief as the Court deems just and equitable.

## JURY DEMAND

MMC demands a trial by jury.

Dated September 7, 2012.

*s/ Jennifer L. Gregor*
James D. Peterson
Jennifer L. Gregor
GODFREY & KAHN, S.C.
One East Main Street, Suite 500
Madison, WI 53703
Phone: 608-257-3911
Fax: 608-257-0609
Email: jpeterson@gklaw.com,
jgregor@gklaw.com

Attorneys for Plaintiff, Memorial Hospital, Inc.

8170511